**UNITED STATES of America**

v.

**John R. GERARD, Jr.**

**Crim. No. 87–177–04.**

United States District Court,
E.D. Pennsylvania.

June 4, 1987.

Edward S.G. Dennis, Jr., U.S. Atty., Joseph T. Labrum, Robert Goldman, Asst. U.S. Attys., Philadelphia, Pa., for plaintiff.

Thomas B. Rutter, Philadelphia, Pa., for defendant.

**MEMORANDUM AND ORDER**

BECHTLE, District Judge.

Presently before the court are defendant John R. Gerard, Jr.'s motion for extension of time in which to file pretrial motions, motion for revocation or amendment of an order of detention pursuant to 18 U.S.C. § 3145(b), and the government's responses

thereto. Since the government does not object to defendant's motion for extension of time, and the discovery materials were not available to the defendant until May 21, 1987, defendant has until Thursday, June 4, 1987, to file pretrial motions.

On May 29, 1987, this court held a *de novo* hearing on the question of defendant's detention, at which time arguments of counsel were heard, and the government presented additional testimony which will be discussed further in this memorandum. For the reasons stated herein, defendant's motion for revocation or amendment of the United States Magistrate's detention order filed May 1, 1987, will be denied.

Defendant is charged in Count Two and Count Four of a forty count indictment. The indictment charges the defendant and twenty-two other defendants with eleven separate offenses all arising under one or more of the provisions of 21 U.S.C. §§ 841, 843, 846, 848, 952, 960, and 18 U.S.C. § 2. All of the defendants, except the defendant involved in the matter presently before the court, are charged in Count One, which is a conspiracy count, that has as its principal subject the importation of phenyl–2–propanone ("P–2–P"), a major precursor chemical used in the manufacture of methamphetamine, a controlled substance, the subsequent storage, transfer and use of P–2–P, the operation of methamphetamine laboratories, the manufacture of multi-pound quantities of methamphetamine, and the distribution of such methamphetamine throughout Pennsylvania, New Jersey, and elsewhere. All of the defendants except one (John Gabriel) are also charged with one or more substantive offenses arising under one or more of the statutes previously mentioned. This defendant is charged in Count Two with violation of 21 U.S.C. §§ 952(a) and 96C(a) & (b)(2) that makes it unlawful to knowingly and intentionally import and aid and abet the importation of P–2–P into the United States. These events are alleged to have taken place between April 22, 1982, and April 30, 1982. Count Four charges that during the same period of time defendant possessed P–2–P with the intent to manufacture methamphetamine in violation of 21 U.S.C.

§ 841(a)(1). At the time these events are alleged to have occurred, the penalty that could be imposed for conviction of such offenses was 5 years each. The defendant was indicted on April 21, 1987, and he appeared before the United States Magistrate on May 1, 1987, at which time the question of pretrial detention was considered.

Title 18, U.S.C. § 3142(f) provides that a detentioner may be held, upon appropriate motion, under the circumstances enumerated in that statutory provision. The government moved for pretrial detention of the defendant pursuant to 18 U.S.C. § 3142(f)(2)(A) on the ground that the defendant posed a serious risk of flight. The government also stated that it was moving to seek detention pursuant to 18 U.S.C. § 3142(f)(2)(B) because it had evidence that defendant would obstruct, or attempt to obstruct, justice or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness. United States Magistrate Edwin E. Naythons held on May 1, 1987, that the defendant should be detained for trial based on his finding that the defendant posed a significant danger to the community because there was probable cause to conclude that the defendant committed an offense for which the maximum term of imprisonment is 10 years. The magistrate held that this provided a presumption of dangerousness that was not rebutted and accordingly concluded that no combination of conditions would reasonably assure the safety of the community. The magistrate also held that there was no serious risk of flight in respect to this defendant.

■ The defendant moved for a *de novo* hearing before this court with respect to the order of detention. The defendant cites *United States v. Himler*, 797 F.2d 156 (3d Cir.1986) in support of his argument that since none of the offenses defendant has been charged with come within § 3142(f)(1) and because the government failed to meet its burden of proof with respect to § 3142(f)(2), the pretrial detention order should be set aside. The principal ground upon which defendant contends

that § 3142(f)(1) has not been satisfied is that the only subsection that could apply in this instance, § 3142(f)(1)(C), does not apply here. Although the penalty for violations of 21 U.S.C. §§ 841(a)(1), 952(a), and 960(a) & (b)(2) which are charged in the indictment was only 5 years at the time that the offenses were allegedly committed (April, 1982), the penalty for those offenses today is 15 years. Subsection (C) of § 3142(f)(1) addresses offenses under the stated statutes to the extent that the offenses carry a maximum term of 10 years imprisonment. The defendant is correct to the extent that if convicted of either of these offenses, he may only be sentenced to a maximum term of 5 years for each offense. The government pointed out at the hearing that the penalty for the offenses for which the defendant stands accused was changed by Congress to increase the penalty from 5 years to 15 years for each of these counts effective November 1, 1986, and 20 years effective November 1, 1987.[1] Further evidence of Congress' intention is in the amendments effective November 1, 1987, when, on that date, the respective penalties for these offenses will be increased to 20 years. It is plain that Congress has considered the conduct that the defendant was charged with in 1982 to be sufficiently serious both today and after November 1, 1987, to triple and quadruple respectively the maximum prison sentence that can be imposed if the conduct occurs in the time following the effective date of those respective amendments. The thrust of the government's argument, therefore, is that when considering the imposition of *civil regulatory detention* it is the conduct of the defendant believed to have occurred in the past that should be considered, and not the ultimate *criminal penalty* that he may receive in the future if he is convicted. The court agrees with this position.

█ The United States Court of Appeals for the Third Circuit in *United States v. Perry*, 788 F.2d 100 (3d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986), in reviewing the Con-

gressional authority to detain persons charged with serious crimes pending trial, ruled that pretrial detention is a civil commitment and not a penalty. The court pointed out that this civil commitment for the safety of the community is within the power of the Congress and, equally important, in respect to the issue presently before the court, this civil commitment must be analyzed independently of the criminal charge. More recently, the United States Supreme Court's decision in *United States v. Salerno*, — U.S. —, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), characterized pretrial detention in criminal cases as within the legitimate regulatory power of the Congress to prevent danger to the community. Pretrial detention, thus being regulatory and not penal, must be determined at the time that the regulatory power is to be imposed, which is at the time of the detention hearing and not at the time that the alleged crime was committed. Under those circumstances the seriousness of the conduct to be regulated must be determined separate and aside from what the ultimate penalty may be if the defendant is convicted of the crimes charged. Concern for prospective harm to the community based on the defendant's *present* potential to inflict that harm is what must be shown to the hearing court. The fact that the ultimate penalty for the alleged conduct can be 5 years per count, even though it has since been increased to 15 years per count and soon to be 20 years per count, is plainly a benefit to the defendant if he finds himself at the penalty stage, but it is of little consequence at the pretrial detention stage.

█ While it is true that the government's evidence must be clear and convincing to support detention, ultimate conviction need not be guaranteed. The judicial officer, in considering rebuttal evidence to the presumption of dangerousness, must consider the weight of the evidence against the defendant and the nature and seriousness of the offense. The presumption is not rebutted merely because the defendant may ultimately be acquitted. If the exact

---

**1.** 21 U.S.C. §§ 841(b)(1)(B), 960(b)(2), amendment effective November 1, 1986, and 21 U.S.C. §§ 841(b)(1)(C), 960(b)(3), amendment effective November 1, 1987.

crimes the defendant is alleged to have committed in 1982 were committed by another person today, the maximum imprisonment that could be imposed upon that person for such conduct would be 15 years for each offense. Such a defendant would clearly fall within the pretrial detention provisions of 18 U.S.C. § 3142(f)(1)(C) and the rebuttable presumption under § 3142(e) would arise in support of detention. The potential for harm to the community, pending trial of the defendant and that other person, is exactly the same, however, and this is not in any way affected by the fact that if both defendants were convicted for the same conduct, they would be subjected to different maximum penalties. It must be assumed that when Congress increased the penalties for the conduct this defendant is alleged to have engaged in, it was aware of its previous enactment in the Bail Reform Act at § 3142(f)(1)(C) and that due to the increased penalty such conduct would put the defendant, following arrest, in a category of persons who could be rebuttably presumed to be dangerous to any other person or the community if probable cause is shown that the proscribed conduct occurred at any previous time.

■ Defendant has not rebutted the evidence of probable cause embodied in the indictment charging him with these offenses, and the court therefore concludes that the defendant should remain detained pending trial by reason of there being a rebuttable presumption that no condition of release will reasonably assure the safety of any other person and the community until the time of trial.

The court heard additional testimony provided by the government at the *de novo* hearing. FBI Agent William E. Teater, who had previously testified at the bail hearing before the United States Magistrate, testified again and stated that following the magistrate's hearing a co-defendant in this case, Richard Coccoli, upon interview had told the agent that he had been involved in setting up the importing company in Canada to import drum quantities of P–2–P into the United States. While Mr. Coccoli was in the company of this defend-

ant in late Fall of 1981 in Philadelphia while enroute to pick up several gallons of P–2–P or to oversee the gallons of P–2–P coming into his possession, this defendant, as they were about to arrive at the area, produced a .45 automatic pistol, cocked it and pointed it at Mr. Coccoli and stated "nothing better go wrong." Mr. Coccoli stated to the agent that he took this to be a threat to his well being and was considerably upset by this episode. This interview took place on May 11, 1987, and followed the detention hearing before the magistrate. Mr. Coccoli, the co-defendant, is charged in the same count as this defendant and Mr. Coccoli entered a plea of guilty to that count on May 15, 1987. Part of his plea agreement with the government is to testify at the trial.

At the pretrial detention hearing the government stated that the primary ground for moving for detention is under § 3142(f)(2)(A). The government also noted, at that time, that evidence regarding intimidation of prospective witnesses would be introduced. The court finds that this is sufficient notice for defendant to prepare a proper defense to an allegation of witness intimidation at the *de novo* hearing before this court. Additionally, defendant had the opportunity to and did cross-examine Agent Teater. Defendant made no objection to the introduction of this evidence. Crediting the evidence offered by the government, this court concludes that this defendant poses a serious risk that he will obstruct, or attempt to obstruct, justice or threaten, injure, or intimidate or attempt to threaten, injure, or intimidate a prospective witness, and accordingly detention is ordered on that basis also.

An appropriate Order will be entered.

## ORDER

AND NOW, TO WIT, this 4th day of June, 1987, upon consideration of defendant's motion for extension of time in which to file pretrial motions and defendant's motion for revocation or amendment of an order of detention, for the reasons stated in the accompanying memorandum, IT IS ORDERED as follows:

1. Defendant John R. Gerard, Jr. has until Thursday, June 4, 1987, to file pretrial motions; and

2. Defendant John R. Gerard, Jr.'s motion for revocation or amendment of an order of detention is *denied.*