**UNITED STATES of America**

v.

**Charles B. RODGERS, a/k/a "Chooch".**

**Crim. No. 90–00210.**

United States District Court,
E.D. Pennsylvania.

May 30, 1990.

Karl K. Lunkenheimer, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Albert J. Raman, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On April 2, 1990, a federal magistrate issued an arrest warrant for the defendant, Charles Rodgers, on the charge of conspiracy to manufacture methamphetamine and phenyl–2–propanone in violation of 21 U.S.C. §§ 841(a)(1) and 846. Rodgers was placed in custody on April 4th. Two days later, the magistrate held a detention hearing and concluded that the defendant should be held without bail pending trial. On April 11th, Rodgers filed a motion to reconsider. The magistrate filed his written findings on April 18th and denied the motion to reconsider on April 19th. On May 1st, a grand jury charged Rodgers with "knowingly and willfully aid[ing], abet[ting], and counsel[ling] the attempt to manufacture approximately one and one-half pounds of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II non-narcotic controlled substance." On May 11th, the defendant then filed with this Court a motion for revocation of the detention order, to which the Government replied on May 16th. The Court held a full evidentiary hearing on May 25th to consider the matter. For the reasons that follow, the defendant's motion now will be denied.

The Bail Reform Act of 1984, Pub.L. 98–473, §§ 202–10, 98 Stat. 1976–87 (codified at 18 U.S.C. §§ 3141–50), governs the pretrial detention of those charged with criminal misconduct. The Act contains both procedural and substantive components. Although the rules of evidence in criminal trials "do not apply to the presen-

tation and consideration of information at a detention hearing," *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir.1985), the Act does afford a defendant "an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). The statute directs the Court to focus on certain factors in ascertaining whether any condition or combination of conditions placed upon the accused's release would reasonably assure that the person will appear at trial and will not pose a danger to others. The Court must consider the nature of the crime charged, the weight of the evidence against the defendant, the defendant's background, including familial, financial, and residential ties to the community, the accused's past involvement in criminal activity, and the danger to the community if the defendant were released before trial. 18 U.S.C. § 3142(g).

■ Because Congress has concluded that persons charged with serious drug offenses pose a heightened risk of flight to avoid prosecution and a special threat to the community, S.Rep. No. 225, 98th Cong., 1st Sess. 20, 23–24 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3203, 3206, 3207; *United States v. Perry*, 788 F.2d 100, 113 (3d Cir.), *cert. denied*, 479 U.S. 864, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986); *United States v. Jessup*, 757 F.2d 378, 385–86 & appendix B (1st Cir.1985), the Act erects a rebuttable presumption that

> no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).

18 U.S.C. § 3142(e). This provision shifts to the defendant only the burden of production on the issues of flight risk and future dangerousness. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). The Government bears the burden of proving by clear and convincing evidence that the defendant constitutes a threat to the community's safety or by a preponderance of the evidence that the defendant will not appear at trial. *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir.1990); *United States v. Jackson*, 845 F.2d 1262, 1264 n. 3 (5th Cir.1988); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir.1986); *Perry*, 788 F.2d at 114–15; *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir.1985). The Government's burden, however, is not activated until the accused has introduced sufficient evidence to rebut the statutory presumption. *See Perry*, 788 F.2d at 115; *see also United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir.1987); *Carbone*, 793 F.2d at 561–62 (Garth, J., dissenting); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir.1985).

■ In this case, Section 3142(e)'s presumption plainly applies. Rodgers is accused of violating 18 U.S.C. § 2(a) and 21 U.S.C. § 841(a)(1). If convicted for aiding and abetting the attempted manufacture of 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, the defendant will receive, by statutory directive, a sentence of ten years to life in prison. 21 U.S.C. § 841(b)(1)(A)(viii) & 846; *United States v. Baker*, 883 F.2d 13, 15 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989). Because a grand jury has indicted him on this charge, probable cause to believe that he committed the offense exists. *Trosper*, 809 F.2d at 1110; *United States v. Hurtado*, 779 F.2d 1467, 1477–79 (11th Cir.1985); *United States v. Contreras*, 776 F.2d 51, 52 (2d Cir.1985); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985).

The Court finds that Rodgers has not supplied an adequate quantum of proof to rebut the presumption that he would flee if released pending trial. At the hearing, the defendant's only evidence was the testimony of his spouse, Diane Rodgers. She stated that she has known Rodgers for seventeen years and has been married to him for fifteen. They have two children, ages twelve and fourteen, who live at home.

The defendant and his spouse have occupied their house for thirteen years. Diane Rodgers testified that she is not employed outside the home and that prior to his arrest, the defendant held two jobs. He has worked as a roofer for a construction company for at least ten years. Rodgers also was engaged as a cab driver for three days before his detention. Mrs. Rodgers further stated that Rodgers does not use drugs or excessive amounts of alcohol and that she would act as the defendant's custodian if he were released.

On cross-examination, however, Diane Rodgers admitted that the couple had not reported income from the defendant's construction job to the Internal Revenue Service and that they had not even filed income tax returns for ten years. She divulged that Rodgers had not worked as a roofer for at least three months before his arrest. She acknowledged that in 1974 Rodgers had been convicted on a weapons charge. Mrs. Rodgers revealed that although she and the defendant had resided in the same house for thirteen years, their electric and telephone services have never been in their names and currently are being billed to others. She additionally stated that Rodgers had a Virginia driver's license, even though he had never lived there, and that for some period of time he had driven a car not registered to him. Finally, Diane Rodgers informed the Court that she and her husband had filed for bankruptcy.

This testimony does not overcome the presumption that Rodgers will not appear for trial if released and, indeed, tends to show that the defendant has every incentive to flee. The amount of illicit substance charged to be involved, a pound and a half, is large. There was evidence that the street value of the drugs made from the chemicals was six hundred thousand dollars. If a jury finds Rodgers guilty of the charged offense, he could be sentenced to life in prison without parole. The evidence against him appears substantial. Law enforcement officials, working undercover, assertedly acted at his request to order chemicals used in the manufacture of methamphetamine and witnessed him take delivery of them. Rodgers allegedly was heard to have offered these services in exchange for drugs.

Further, although the defendant demonstrated that in the past he may have had ties to the community, those bonds have since dissipated. Rodgers had not worked as a roofer for at least three months before his arrest. He had held his cab driving job for only three days. Even though Mr. and Mrs. Rodgers have resided in the same house for several years, there is no evidence that the couple possesses any equity in that property or what resources they anticipate owning at the conclusion of the bankruptcy proceedings. The defendant and his wife have engaged in activities, including the use of false names, designed to evade paying for services associated with their home. And, of course, Mr. and Mrs. Rodgers have not filed income tax returns for a decade and apparently have never reported the defendant's earnings as a roofer. Even apart from the possibility of criminal liability for this conduct, the defendant faces further strain on his already precarious financial position from his near-certain civil obligation to pay back taxes, plus interest and penalties. In sum, the testimony simply was not supportive of the proposition that Rodgers will appear at trial if not detained: both Diane Rodgers, who has offered to act as custodian, and the defendant have every reason to leave the jurisdiction. This is made all the more clear by the absence of testimony that Rodgers has any family in the area other than his spouse and two children.

In any event, the foregoing evidence, in conjunction with that introduced by the prosecution, preponderates on the whole toward the conclusion that no condition or combination of conditions could reasonably assure Rodgers's presence at trial. In addition to his lack of discernible familial or financial ties to the Philadelphia area, his impending troubles with the Internal Revenue Service and creditors, and his use of fictitious names in securing utility services, all of which serve to undermine the adequacy of the testimony tendered to overcome the statutory presumption, Rodgers has

the means to evade prosecution. Although under normal circumstances a person's "very indigence inhibits his ability to travel far," *O'Brien*, 895 F.2d at 816, the defendant's allegedly illegal conduct appears to have been at the behest of a large criminal organization. He belongs to the Warlocks motorcycle gang, which boasts a membership of two hundred persons. Two of his confederates in the putative criminal scheme to obtain chemicals used in the manufacture of drugs also are members of the club. The Government elicited credible testimony that the Warlocks have engaged in other illegal activities and have the resources to assist the defendant in fleeing the Eastern District.

The defendant's motion is denied. He will be detained pending trial, which is scheduled to commence on June 18, 1990.

## ORDER

AND NOW, this 30th day of May, 1990, for the reasons set forth in this Court's Memorandum of May 30, 1990;

IT IS ORDERED that Defendant Charles B. Rodgers's Motion for Revocation of Detention Order is DENIED;

AND IT IS FURTHER ORDERED that Defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

AND IT IS FURTHER ORDERED that Defendant shall be afforded reasonable opportunity for private consultation with his counsel and that, on order of this Court or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of appearances in connection with court proceedings.